**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Media Trademark and Licensing Limited,<br><br>Plaintiff,<br><br>v.<br><br>COINGEEKLTD.COM,<br><br>Defendant. | No. CV-21-00214-PHX-DWL<br><br>**ORDER** |

Pending before the Court are (1) Plaintiff's *ex parte* motion for an order authorizing alternative service of process (Doc. 9) and (2) Plaintiff's *ex parte* motion for extension of time to complete service of process (Doc. 10). For the following reasons, the former is denied without prejudice and the latter is granted.

## BACKGROUND

On February 9, 2021, Plaintiff filed the complaint against "an unknown person or persons" (the "Registrants") who registered the domain name COINGEEKLTD.COM (the "Domain Name"),[1] which "incorporates [Plaintiff's] federally registered trademark verbatim." (Doc. 1 ¶¶ 2, 4, 6.) The Registrants "used a privacy service to actively conceal their identity" and Plaintiff's "efforts to locate [the Registrants] have been unsuccessful due to [their] efforts to actively conceal [their] identity." (*Id.* ¶¶ 2, 4.) Plaintiff asserts a claim for cybersquatting in violation of 15 U.S.C. §1125(d). (*Id.* ¶¶ 25-33.) Additionally

---
[1] "A domain name identifies an address on the Internet. . . . Domain names are unique; that is, a given domain name is assigned to only one entity at a time." *United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2303 n.1 (2020).

or alternatively, Plaintiff contends that "[t]his is also an in rem proceeding directed against an internet domain name pursuant to 15 U.S.C. § 1125(d)(2)(A)." (*Id.* ¶ 2.)

On April 26, 2021, Plaintiff filed the pending motions for leave to serve process by alternative means (Doc. 9) and for an extension of time to serve (Doc. 10). The former explains that the Registrants' website has used Plaintiff's trademarks "to advertise, promote and attract victims to a scam involving cryptocurrency." (Doc. 9 at 6.) The Registrants' website includes information with false leads as to their identity, including a false association with a UK registered company and a listed but inactive phone number. (*Id.*) The publicly available domain name registration record "reflects that the [Registrants] used a privacy service based out of Panama to conceal [their] identity." (*Id.* at 7.) Plaintiff served a subpoena on the "Domain Name Registrar," which provided user account information including a physical address in the Philippines and an email address: virtualtn@gmail.com. (*Id.*) Plaintiff states that it "is in the process of attempting service of process on the physical address in the Philippines pursuant to the Hague Service Convention," but "given the Registrant[s'] use of privacy services and efforts to conceal [their] true identity, the address in the Philippines may not be correct." (*Id.*) Plaintiff "believes that service of process via e-mail is the most likely and reasonably calculated means of providing notice of this action to the Registrant[s]" and seeks leave to serve process in this manner. (*Id.*)

**DISCUSSION**

As a preliminary matter, the Court shares Plaintiff's belief that service of process via e-mail is the most likely and reasonably calculated means of providing notice of this action to the Registrants. The remaining question is whether such service is legally permissible. The Court concludes that it is not, at this time, on these facts, but that it might become permissible if the situation changes.

I.  <u>Legal Standard</u>

It is unclear whether the Registrants are one or more individuals, corporations, unincorporated business entities, or some mix thereof. However, this uncertainty has little

effect on the analysis, as Federal Rule of Civil Procedure 4(h)(2), which authorizes service of process on a foreign business entity, provides that such service may be accomplished "in any manner prescribed by Rule 4(f) for serving [an individual in a foreign country], except personal delivery under (f)(2)(C)(i)." Rule 4(f), in turn, provides that service on an individual in a foreign country may be accomplished:

> **(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> **(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> **(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> **(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> **(C)** unless prohibited by the foreign country's law, by:
>>
>>> **(i)** delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> **(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> **(3)** by other means not prohibited by international agreement, as the court orders.

II. <u>Analysis</u>

Plaintiff has been attempting to serve the unknown Registrants pursuant to Rule 4(f)(1) by making use of the means of service authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("the Hague Service Convention"). Because those service efforts have proved unsuccessful to date, Plaintiff now seeks leave to serve them via email pursuant to Rule 4(f)(3).

"As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). "No other limitations are evident

from the text." *Id.* "In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id.* Rule 4(f) does not "create a hierarchy of preferred methods of service of process"; rather, "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Id.* at 1014-15. As such, a plaintiff need not "attempt[] permissible means of service of process before petitioning the court" for leave to serve by alternative means. *Id.* at 1016. Instead, a plaintiff must demonstrate only "that the facts and circumstances of the present case necessitate[] the district court's intervention," in which case the district court can "properly exercise[] its discretionary powers to craft alternate means of service"—so long as the alternative means "comport with constitutional notions of due process" and are not prohibited by international agreement. *Id.*

The Court has no trouble concluding that, if permissible, intervention would be warranted in light of the facts and circumstances of this case. The Registrants have gone to great lengths to disguise their identities and whereabouts, making service of process difficult.

The Court also has no trouble concluding that serving the Registrants via email would "comport with constitutional notions of due process." *Id.* "To meet this requirement, the method of service crafted by the district court must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks omitted). In *Rio*, where the defendant had no easily ascertainable physical address and email was its primary method of communication, the Ninth Circuit concluded "not only that service of process by email was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]." *Id.* at 1017. The same is true under the facts of this case.[2]

---

[2] *Rio* was decided in 2002, at a time when email had been gaining widespread popularity for only a few years and was "untrodden ground," and the Ninth Circuit thus

- 4 -

The one remaining issue is whether service by email is "not prohibited by international agreement." *Id.* at 1014; Fed. R. Civ. P. 4(f)(3). In *Rio*, no international agreement was at issue. The Ninth Circuit noted that "[a] federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)," but because the defendant was in Costa Rica, which was "not a signatory," the Hague Service Convention did "not apply" in that case. 284 F.3d at 1015 n.4.

Here, the Hague Service Convention applies because the Registrants are believed to be located at a specific address in the Philippines (Doc. 9 at 7, 11; Doc. 9-1 ¶ 7), which is a signatory.[3]

### A. The Hague Service Convention

"The Hague Service Convention is a multilateral treaty . . . intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Article 1 of the Convention specifies that it applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," but it does not apply "where the address of the person to be served with the document is not known." Art. 1. "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Schlunk*, 486 U.S. at 699; *see also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 534 & n.15 (1987) (contrasting the Hague Conference on Private International Law, which "does not speak in mandatory terms which

---

left it "to the discretion of the district court to balance the limitations of email service against its benefits in any particular case." 284 F.3d at 1017-18. Technical advances over the past two decades have rendered these limitations all but obsolete, and the Court is satisfied that the benefits of email service in this case would far outweigh any conceivable technological limitations.

[3] https://www.hcch.net/en/states/hcch-members/details1/?sid=121; https://www.hcch.net/en/instruments/conventions/status-table/?cid=17. Plaintiff does not dispute this fact. (Doc. 9 at 11.)

- 5 -

would purport to describe the procedures for all permissible transnational discovery and exclude all other existing practices," with the "mandatory language" in the Hague Service Convention's "model exclusivity provision").

"The primary innovation of the Hague Service Convention . . . is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (internal quotation marks omitted). "When a central authority receives an appropriate request, it must serve the documents or arrange for their service, Art. 5, and then provide a certificate of service, Art. 6." *Id.* "Submitting a request to a central authority is not, however, the only method of service approved by the Convention." *Id.* "For example, Article 8 permits service through diplomatic and consular agents; Article 11 provides that any two states can agree to methods of service not otherwise specified in the Convention; and Article 19 clarifies that the Convention does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention." *Id.*

In *Water Splash*, the Supreme Court interpreted Article 10(a) of the Convention, which states that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." *Id.* Articles 10(b) and 10(c) set forth two ways that the Convention would not interfere with the freedom "to effect service," whereas 10(a) used the language "to send judicial documents." The question in *Water Splash* was "whether, despite this textual difference, the Article 10(a) phrase 'send judicial documents' encompasses sending documents *for the purposes of service*." *Id.* The Supreme Court answered that question in the affirmative:

> In short, the traditional tools of treaty interpretation unmistakably demonstrate that Article 10(a) encompasses service by mail. To be clear, this does not mean that the Convention affirmatively *authorizes* service by mail. Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not "interfere with . . . the freedom" to serve documents through postal channels. In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.

*Id.* at 1513.

It follows from *Water Splash* that without the text of Article 10, the Convention would have interfered with the various methods of service delineated in that section. Because "the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies," any service method not specifically authorized by the Convention is preempted, except where the Convention specifically provides that it would "not interfere" under certain conditions. *Id.* In other words, Article 10 cannot be read as also applying to everything *not* listed in Article 10.

### B. Service Via Email Under The Hague Service Convention

Although there is a split of authority on the issue, many courts have concluded that, where a method of service does not fall into any category mentioned by the Hague Service Convention—either an authorized means of service, or one with which the Convention "will not interfere" under certain conditions—that method of service is preempted and is therefore prohibited by international agreement. *See, e.g., Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 983 (N.D. Cal. 2020) ("The Convention . . . doesn't simply offer options for service abroad—options that plaintiffs can resort to or not at their discretion. Rather, unless an exception applies, the Convention-delineated methods of service . . . are exclusive. This conclusion follows from the Convention's structure, which enumerates particular methods for serving documents abroad, and from its text, which states that the Convention 'shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.' Using a method of service that is not enumerated in the Convention would be tantamount to not 'apply[ing]' the Convention, which is expressly prohibited. . . . To the extent there was any doubt about this interpretation, it was resolved in 2017 in *Water Splash* . . . .") (citations omitted); *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 417 (N.D. Tex. 2020) ("Several federal district courts have reached [the] conclusion [that] the Convention prohibits service methods that are not

expressly prohibited but are nonetheless inconsistent with the Convention's authorized processes."). *But see, e.g., Chanel, Inc. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, 2020 WL 8226841, *2 (S.D. Fla. 2020) ("Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting."); *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) ("Where a signatory nation has objected to only those means of service listed in Article X, a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article X."). Service via electronic or digital means is not mentioned in the text of the Convention. This is not surprising, given that the Convention was drafted in the 1960s, at a time when very few people knew that email existed, and decades before email would become commonplace.

An argument could be made that email is a means by which one could "send judicial documents, by postal channels, directly to persons abroad," which would necessitate interpreting the words "postal channels." *Cf. Water Splash*, 137 S. Ct. at 1511 ("Along similar lines, the Rapporteur's report on a draft version of Article 10—which did not materially differ from the final version—stated that the 'provision of paragraph 1 also permits service . . . by telegram' and that the drafters "did not accept the proposal that postal channels be limited to registered mail.").

The Court need not undertake such an analysis here, however, because even assuming *arguendo* that email is a means by which one could "send judicial documents, by postal channels, directly to persons abroad"—that is, a potentially permissible method of service under Section 10(a) of the Convention—the Philippines has objected to service in this manner. *See* Declarations/Reservations/Notification, *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1435&disp=resdn ("The Philippines objects to the transmission channels under paragraphs a and c as provided for in Article 10 of the Convention."). And

as noted by the Supreme Court in *Water Splash*, "in cases governed by the Hague Service Convention, service by mail is permissible [only] if . . . the receiving state has not objected to service by mail." 137 S. Ct. at 1513. Accordingly, service via email on a foreign individual or business entity located in the Philippines is "prohibited by international agreement" and is thus impermissible under Rule 4(f)(3). *Cf. Facebook,* 480 F. Supp. 3d at 983 ("[A]lthough it has been suggested that service by e-mail could conceivably come within an expansive reading of service 'by postal channels,' . . . China has affirmatively objected to service 'by postal channels,' so that reading, even if accepted, wouldn't support service by e-mail on defendants in China.").

As other courts have noted, "this is not the most practical result," but "in the long run, the Convention's rules may benefit" Plaintiff, considering that "parties that comply with the Convention ultimately may find it easier to enforce their judgments abroad." *Facebook*, 480 F. Supp. 3d at 987-88. At any rate, Rule 4(f)(3) does not permit the Court to authorize an alternative means of service that is prohibited by international agreement.

The Court acknowledges that some courts have reached the opposite conclusion. *Facebook*, 480 F. Supp. 3d at 982 n.3, 984 n.5 (collecting cases). To the extent these cases rely on *Rio*, they are unpersuasive. The Hague Service Convention did not apply in *Rio*, as the Ninth Circuit expressly noted. 284 F.3d at 1015 n.4. The Ninth Circuit further emphasized, in the same footnote, that a "federal court *would* be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention." *Id.* (emphasis added). Thus, "*Rio Properties* does not suggest (and, if anything, rejects the notion) that it is permissible under Rule 4(f)(3) to authorize service" in a manner not authorized by the Hague Service Convention in a country that is a signatory to the Convention. *Gonzalez v. Human Rights Network*, 2021 WL 86767, *15 (D. Ariz. 2021).

Finally, there is no merit to Plaintiff's argument that "the Philippines has not expressly objected to service via e-mail." (Doc. 9 at 11-12.) As discussed above, objection

is an option for the narrow category of service methods which are not expressly authorized but with which the Convention will not interfere otherwise. Beyond those forms of service expressly authorized and those expressly listed as ones with which the Convention will not interfere (sans objection), all other methods are preempted. *Facebook*, 480 F. Supp. 3d at 984 ("The Convention doesn't offer service by e-mail as an option, so there was no reason for China to affirmatively object to it.").

### C. Inability To Serve Via The Hague Service Convention

Article 14 states that "[d]ifficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels." Article 15, on the other hand, provides that "[e]ach Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled":

a) the document was transmitted by one of the methods provided for in this Convention,

b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

The United States has so declared: "In accordance with the second paragraph of Article 15, it is declared that the judge may, notwithstanding the provisions of the first paragraph of Article 15, give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled."[4] Thus, if Plaintiff is unable to serve the Registrants via the Hague Service Convention after at least six months of diligent effort, Plaintiff may file a motion for default judgment.

Furthermore, by its terms, the Hague Service Convention does not apply "where the

---

[4] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=428&disp=resdn.

address of the person to be served with the document is not known." Art. 1. If the address Plaintiff has for the Registrants ultimately proves to be an incorrect address, and a true address remains unknown, the Hague Service Convention will not apply to this action. Under that circumstance, Plaintiff could file a renewed motion for leave to serve by alternative means, as international law would no longer be a bar to granting leave to serve via email.

Accordingly,

**IT IS ORDERED** that Plaintiff's *ex parte* motion for an order authorizing alternative service of process (Doc. 9) is **denied without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's *ex parte* motion for extension of time to complete service of process (Doc. 10) is **granted**. The deadline for Plaintiff to serve the Registrants is extended to January 7, 2022. A further extension will not be granted unless Plaintiff demonstrates timely and diligent efforts to serve via the Hague Service Convention.

Dated this 9th day of July, 2021.

Dominic W. Lanza
United States District Judge